[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 220 
In my view of the case, the plaintiffs made payment to Townsend for the cars Nos. 27, 28, 31 and 32, in their own wrong. The car company, of which Townsend was the president, contracted with the plaintiffs to build for them and deliver to them a number of cars for their road, upon terms agreed upon. The cars were to be ready at intervals specified, were to be inspected by an agent of the plaintiffs upon notice given by the car company, the inspector was to make a certificate of inspection, and was to see that they were delivered on the track of the Buffalo and Erie Railroad company in the city of Buffalo, for the plaintiffs. Upon the presentation of this certificate to the plaintiffs and not sooner, the car company was entitled to demand payment for the cars. The plaintiffs for a time held the car company to a strict performance of this contract, and furnished the inspector contemplated by its terms. In relation to the four cars in question they relaxed their vigilance. They did not require an inspection as to their condition, nor a certificate from the inspector, of their delivery to or for them, on the Buffalo and Erie track. They paid the purchase price upon presentation of an invoice from the car company, and a certificate from the New York Central Railroad company, that the cars had been delivered to the plaintiffs upon their road. This certificate was carelessly given and was erroneous. Before that time, the cars had been purchased and paid for by the defendants, and had been delivered by the car company to the defendants, and by them transported to their yard in the city of Buffalo, and were then in their actual possession. No delivery was made to the Central company for the plaintiffs. The presentation of the invoice and the certificate of delivery, was fraudulent on the part of Townsend.
Upon this simple state of facts there can be scarcely a pretense of a claim against the defendants, for the price of these four cars. It stands thus: The defendants had bought of the manufacturer certain railroad cars, which they had a right to sell; had paid for them, received them into, and retained them in their actual possession. The manufacturer *Page 222 
induces the plaintiffs to pay him for the same cars upon the fraudulent representation that he has delivered them to the agent of the plaintiffs, under the contract for building similar cars. It needs no argument to show that the plaintiffs must bear the loss.
The appellants insist that a different result must be reached for two reasons: first, that the defendants stood in such confidential relations with the plaintiffs that they are not permitted to become the purchasers of these cars, and secondly, that it was the duty of the defendants to have informed the plaintiffs of their purchase of these cars; that their omission to do so, justified the plaintiffs in making payment to Townsend, and gives a just cause of action against the defendants. As I understand the charge, the judge at the circuit ruled, that there was no such confidential relations existing between the plaintiffs and the defendants by reason of the contract mentioned, as would prevent the defendants from becoming mortgagees or purchasers of the cars in question. No point in favor of a new trial could therefore have been made at the General Term on this branch of the case, nor can the argument be here urged to sustain the judgment of the General Term.
The proposition contended for by the appellants is embodied in the refusal of the judge to charge the following principle, upon the request of the defendants, viz.: "That the delivery of the car bodies of 27 and 28 on July 10th, and of 31 and 32 on July 27th, to Kasson, in person, and the charge thenceforth by his man, till they came to and remained in the yard of Kasson, Son 
Co., was a complete delivery to the defendants as against all persons; and if the jury believe these car bodies were so delivered, the title of the defendants then became complete, and the defendants are entitled to a verdict." The judge charged in the following language: "That if the defendants knew, or had reason to believe, that the consequences of their omitting to notify the plaintiffs of their claim of title would be that the plaintiffs would pay the car company for the cars, on the proper evidence of their having been sent to them, the defendants, and did so omit *Page 223 
to give notice to the plaintiffs, and the plaintiffs did pay for the cars upon such evidence, without notice of any claim of title by the defendants, the plaintiffs' title cannot be defeated by a title thus attempted to be acquired by the defendants."
If this charge had been accompanied by evidence of fraudulent collusion between the defendants and Townsend, it would have been well enough. Under the proof as it stood, it was not competent to ask the jury to find upon the question of the bona fides of the bill of sale to the defendants, and whether they knew, or had reason to believe, that an omission to give notice of their claim, would induce the plaintiffs to pay Townsend for four passenger cars that had never been delivered to them. The only facts in evidence pertinent to this point were, they had purchased and paid for these four cars, and that the defendants knew that a contract for building and delivering cars of various kinds, existed between Townsend and the plaintiffs. If they knew this, they knew also that the plaintiffs were not bound to pay for the cars until inspected, and a certificate given of delivery, and there is no evidence that they had the slightest reason to suspect that Townsend would present to the plaintiffs false evidence of delivery, on which to obtain the money. There were not sufficient facts in evidence to justify the submission of these questions to the jury.
Neither am I prepared to acquiesce in the law thus laid down at the circuit. Briefly it is this: Townsend sells to Kasson four cars, having a right to sell them. They are delivered to Kasson and paid for by him in good faith. Subsequently Kasson has reason to believe that Townsend intends to present fraudulent evidence of the delivery of the same cars to the plaintiffs and obtain their price from them. Unless Kasson thereupon notifies the plaintiffs of his ownership, his title to the cars fails, and the plaintiffs can reclaim them from his possession.
I am not aware of any principle of law on which this position can be defended. If there was collusion between Townsend and Kasson, I can readily perceive why Kasson should respond to the plaintiffs. So if Kasson did any act to *Page 224 
promote or induce the payment by the plaintiffs for the cars. So if he had been present at the payment, and without warning, had seen the defendants purchase and pay for the cars, he would have been held to have waived his claim in behalf of the purchaser. By the rule under consideration he merely "had reason to believe," that Townsend would at a future time perpetrate a fraud, that Townsend contemplated the commission of a fraud. If I know that a villain intends to defraud or in any way to injure my neighbor, it is doubtless my duty as a good citizen and as a christian man, to put him on his guard. But there is no rule of law which renders me liable for his loss in case of my neglect of this duty. It is a moral duty simply, not recognized by law. Certainly there is no law which requires, upon mere suspicion or belief, that I should thrust myself into the business affairs of my neighbors, and endeavor to transact for them their concerns and provide for them that wisdom and prudence which they are competent to furnish for themselves. It would be officious intermeddling simply. The question of negligence on the part of the defendants did not exist in this case and was improperly submitted to the jury.
The plaintiffs further insist that the defendants must fail on the ground of usury in the transactions between themselves and the car company. The question of usury is a personal one, and cannot be raised by the plaintiffs in this case. See BelmontBank of Ohio v. Hoge (not reported), and Williams v.Burch, decided June 7, 1867, where the precise question is disposed of.
Under the stipulation judgment must be entered for the defendants. It must, however, be limited to $3,000 and interest, together with the expenses of freight, insurance and storage, with interest upon them. On the trial the defendants remitted all claim beyond these sums, and such remission remains of record in the case. The defendants are at liberty to apply for a writ of inquiry to ascertain their damages, or a reference or such other proceeding as they may be advised is legal and proper.
Judgment affirmed. *Page 225