HIRAM BERDAN, Appellant, *v.* LUCY W. SEDGWICK, Administratrix, etc., of HENRY J. SEDGWICK, and GEORGE D. COWLES, impleaded with others, Respondents.

A grantee of real estate is not precluded from setting up the defence of usury to a prior mortgage by the recovery of a judgment against the mortgagor upon the accompanying bond, such recovery being had subsequent to his purchase.

Where the purchaser, by agreement with his vendor, executes a bond and mortgage to secure a portion of the purchase-money equal in amount to a prior usurious mortgage upon the same premises, and places them in the hands of a third person, to be delivered to the vendor if the latter succeeds in setting aside such prior mortgage, but if he fails in so doing, to be disposed of to pay off such usurious mortgage, their proceeds to be delivered to the purchaser for that purpose, this is not such an assuming of the usurious mortgage, or purchase subject to it, as will estop the purchaser from himself setting up the usury.

(Argued January 11th; decided September 13th, 1871.)

APPEAL from an order of the General Term of the Supreme Court in the fifth district, affirming a judgment dismissing the complaint.

This is an action for the foreclosure of a mortgage made by Stephen D. Dillaye and wife to the appellant. The action was against Dillaye and wife and the respondents, who were subsequent purchasers of the premises. The defence of usury was set up by the respondents, and the question whether, under the circumstances of the case, they had a

right to set up that defence, presents the principal point on this appeal. The judge who tried the cause made his findings of fact and of law, as follows:

1. That the defendants, Stephen D. Dillaye and Charlotte B. Dillaye, his wife, executed and delivered to the plaintiff the bond and mortgage mentioned and referred to in the complaint herein, and that the bond and mortgage are correctly described in said complaint.

2. That on or about the 21st day of October, 1856, Hiram Berdan commenced an action on the bond, in the Superior Court of the city of New York, against Dillaye, the obligor and mortgagor, wherein Dillaye interposed the defence of usury, it being the same defence interposed by the defendants in this action; that the action was duly referred to the Hon. Wm. F. Allen, sole referee, the issue tried, and the referee found that the bond was not void for usury, and thereupon ordered judgment for the plaintiff; and thereupon, on the 20th day of July, 1859, judgment was entered in that action in favor of Hiram Berdan against Stephen D. Dillaye, for damages, $10,576.88, costs, $352.88, which judgment remains wholly unpaid; that afterwards, and before the commencement of this suit, an execution was issued on said judgment against the property of Dillaye and delivered to the sheriff of the proper county, and by him returned wholly unsatisfied.

3. That on the 1st day of December, 1853, the defendants, Henry J. Sedgwick and George D. Cowles, purchased of Dillaye, and he, with Charlotte B. Dillaye, his wife, conveyed the property covered by the plaintiff's mortgage, together with the other undivided half of the same premises, for the sum of $41,000, and that Dillaye, with his wife, executed and delivered to them their deed, with full covenants of warranty containing covenants of seisin, of quiet enjoyment and against encumbrances. That upon such purchase Sedgwick and Cowles either paid in cash, or secured by mortgage upon the premises, the whole purchase-price; that they executed to Dillaye a bond and mortgage for $7,500 upon the same undivided

half upon which plaintiff's mortgage was given, and the same was delivered to one George F. Comstock, under the agreement executed at the same time between Sedgwick and Cowles and Dillaye, of which the following is a copy:

"This agreement, made and concluded this 1st day of December, A. D. 1853, between Stephen D. Dillaye, of the city of Syracuse, county of Onondaga and State of New York, and Henry J. Sedgwick and George D. Cowles, both of said city, county and State, of the second part, witnesseth: That the said party of the first part, for and in consideration of the purchase of the Granger block, No. 102, in said city, this day made by the parties of the second part, of the said party of the first part, for the sum of $41,000, and in consideration of the covenants and agreements of the said parties of the second part herein set forth, hereby covenants and agrees to and with the said parties of the second part, among other things, that a mortgage of $7,500, bearing date this 1st day of December, 1853, and given by the said parties of the second part to the said party of the first part, on the one undivided half of the Granger block, No. 102, of the city of Syracuse, shall be the first mortgage placed on record of the mortgages given this day by the said parties of the second part to the said party of the first part, and shall thereafter be placed in the hands of George F. Comstock, attorney, in the city of Syracuse, for this purpose, to wit: That if the said party of the first part shall fail to set aside a certain mortgage given by him to one Hiram Berdan, for the sum of $7,500, then the said Comstock shall dispose of the mortgage in his hands, to pay off the said mortgage given to Berdan, and shall deliver the proceeds thereof to the said parties of the second part for that purpose. And if the said party of the first part shall succeed in setting aside said mortgage to Berdan, then the said Comstock shall deliver the mortgage in his hands to the said party of the first part, to be disposed of as he sees fit.

"(Signed.) "STEPHEN D. DILLAYE. [L. s.]
"GEORGE D. COWLES. [L. s.]
"H. J. SEDGWICK. [L. s.]"

4. That no other agreement or arrangement was made between the parties at the time of the purchase, except what was contained in the agreement and the deed and mortgage executed at the same time.

That the mortgage to Dillaye was recorded and deposited with George F. Comstock, in pursuance of said agreement, and that on the 25th day of June, 1854, Berdan, the plaintiff in this suit, commenced a suit in the Supreme Court against Dillaye, Sedgwick, Cowles and others, to foreclose the same mortgage from Dillaye to Berdan, described in the complaint in this cause; that Dillaye, Sedgwick and Cowles interposed as a defence to such action the same defence substantially which is contained in the second defence in the answer in this action; that the cause was brought to trial, and judgment entered upon such defence in favor of the defendants on the 2d day of August, 1855 ; that afterwards plaintiff appealed to the General Term, where the judgment was reversed and a new trial granted, and the cause was subsequently discontinued by the plaintiff and the costs paid, before the commencement of his action on the bond in the Superior Court of New York.

5. That within a day or two after the recovery of judgment in favor of Dillaye, Sedgwick and Cowles against Berdan, Sedgwick, without the consent of Cowles, consented that the mortgage deposited with Comstock should be delivered up to Dillaye, and the same was thereupon delivered up to him, and was subsequently sold and assigned by him, and is now outstanding and in process of foreclosure against these defendants.

6. That the Berdan mortgage set out in the complaint was given upon a loan of moneys therein specified by the plaintiff to the defendant Dillaye, and that upon said loan, it was usuriously agreed between the plaintiff and Dillaye, that Dillaye should pay to the plaintiff, for the use of the money so loaned, the sum of $1,000 over and above seven per cent per annum, the legal rate of interest thereon.

As conclusions of law the court find.

1. That Stephen D. Dillaye is estopped by the judgment and determination in said action on the bond, in the Superior Court of the city of New York, from interposing the defence of usury in this action.

2. That Sedgwick and Cowles are not estopped from setting up the defence of usury under the facts of this case.

3. That the Berdan mortgage, as against the defendants Sedgwick and Cowles, is usurious and void, and constitutes no legal lien upon the premises described therein, and that the complaint be dismissed with costs.

The judgment entered in accordance with these findings was affirmed by the General Term of the fifth district. The plaintiff appeals to the Court of Appeals.

The case below is reported, 40 Barbour, 359.

*G. N. Kennedy,* for the appellant.

*D. Pratt,* for the respondent.

HUNT, C. The general principles by which this case is to be decided, are well settled. The mortgage in suit has been adjudged to have been given upon an usurious agreement for the loan of money. This is not now controverted. The statutes of this State declare that all such agreements and all securities given as collateral to them are void. They are void, however, in a limited sense. They are not so absolutely void that the borrower is prevented from making payment, if he desires to do so. If he voluntarily does this, he cannot reclaim the money thus paid. They are not so far void, that the borrower is not at liberty to direct the payment of the debt. Thus the maker of a general assignment for the benefit of creditors may lawfully include in it and direct the payment of an usurious debt. (*Pratt* v. *Adams,* 7 Paige, 615 ; *Murray* v. *Judson,* 5 Seld., 73.) So the borrower of money upon an usurious contract, which is secured by a mortgage upon land, upon making sale of the land, may lawfully contract with his vendee for the payment of the usurious mort-

gage, and the vendee will not then be at liberty to set up the objection of usury. (*Cole* v. *Savage*, 10 Paige, 583; *Hartley* v. *Harrison*, 24 N. Y., 171; *Mason* v. *Lord*, 40 N. Y., 476.)

That the borrower only is entitled to interpose the defence of usury, is also a well settled principle. (*Cole* v. *Savage*, *supra*; *Williams* v. *Tilt*, 36 N. Y., 319.)

Like the preceding one, this principle is also subject to many exceptions. Thus, it is not doubted that heirs may make the defence with equal effect, as the ancestors could make it. The defence may be made, upon the same principle, by devisees, by subsequent mortgagees and purchasers, and by trustees. The heir is privy in blood. The devisee or purchaser is privy in estate, and each, in this respect, succeeds to the right of his ancestor or grantor. (*Cole* v. *Savage*, *supra*; *Hartley* v. *Harrison*; *Post* v. *Dart*, 8 Paige, 639.) As it is expressed in the head note to the last mentioned case, " the defence of usury may be set up by any one who claims under the mortgagor, and in privity with him. For the usurious mortgage is void, not only as to the mortgagor, but as to all others who succeed to his rights in the mortgaged premises, either by operation of law or otherwise.

In the present case, Sedgwick and Cowles were the subsequent grantees of the mortgaged premises and of the whole interest therein, with no agreement to assume the disputed mortgage. They are sought to be excluded from setting up the defence of usury upon two grounds, 1st. That a judgment having been rendered against Dillaye, the mortgagor, establishing the validity of the mortgage, the other and subsequent parties are concluded thereby.

In the case of *Post* v. *Dart*, *supra*, judgment *pro confesso*, had been taken against the mortgagor, by which his liability to pay the debt was fixed by judgment. The court, nevertheless, granted to the Bank of Utica, a subsequent purchaser, an order and a commission, for the purpose of establishing the usury, assuming that the purchaser might litigate that point, although the liability of the mortgagor was not open to further

question. Here Dillaye's liability is fixed. But he does not represent Sedgwick & Cowles, nor are his acts or declarations, after their purchase, evidence against them. As a witness, indeed, his declarations might impair their rights, as could the testimony of any other witness. But like other witnesses, his statements, when not under oath and in reference to this particular case, possess no virtue. The judgment against Dillaye was rendered in 1859. The purchase by Sedgwick and Cowles was made in 1853. After this purchase, the rights and interests of the parties were different, perhaps hostile to each other. Dillaye did not own the property, was not in its possession, and could neither say or do or suffer anything which could affect the interests of his vendees. The action in which judgment was given against him was of a personal character simply ; Sedgwick and Cowles were not parties to it, and could take no action in it for their defence or the protection of their rights. Upon no principle can they be deemed to be bound by it.

It is said, secondly, that the agreement of December 1st, 1853, between Dillaye, and Sedgwick and Cowles, amounted to an agreement, on the part of the latter, to assume or provide the means of payment of the Burdan mortgage. There is no dissent among the counsel here, or in the books, to the proposition that, if the purchaser undertakes to pay the mortgage, or if the conveyance is made subject to it, the vendee cannot set up the defence of usury. This is upon the principle already stated, that the defence is personal, that the borrower has the right to waive it, and that by thus providing for its payment, he does waive it. To permit the defence in such case would also be a fraud, in allowing the vendee to obtain a valuable interest which, by the terms of his purchase, it was agreed that he should not possess.

In the instance before us, Sedgwick and Cowles, by money and by mortgages, paid to Dillaye the whole amount of the purchase-money, to wit, $41,000. The Berdan mortgage also was in form a lien upon the property. It is not recited that the parties did not assume it, or that Dillaye intended,

or desired to contest it. It is assumed, and all the provisions of the agreement are directed to that end. To meet the views of the vendor and vendees, the latter gave a mortgage of $7,500 (the amount of the Berdan mortgage), which was to be recorded before any of the other mortgages given by them. This mortgage was to be placed in the hands of Judge Comstock for this purpose, viz. : That if Dillaye should fail to set aside the Berdan mortgage, Comstock should dispose of this mortgage, and deliver the proceeds to Sedgwick and Cowles for the purpose of paying off the mortgage given to Berdan. If Dillaye succeeded in setting aside the Berdan mortgage, then Comstock should deliver this mortgage to Dillaye, to be used by him as his own property.

It is to be observed that Sedgwick and Cowles were bound in any event to pay this mortgage. The only uncertainty was, as to what should be done with the proceeds of it. In one event they were to be applied in extinction of Berdan's mortgage. In the other they were to be handed over to Dillaye. As the parties thus provided absolutely for payment of the whole amount of their purchase-money, without reference to the Berdan mortgage, they cannot be said to have assumed the payment of that mortgage as a part of the purchase-price.

It is said, however, that Sedgwick and Cowles substantially agreed to pay the Berdan mortgage, in the event that Dillaye did not succeed in setting it aside; that he did not so succeed, and that the obligation to pay has, therefore, attached.

This is not an accurate deduction of fact from the terms of the contract. Sedgwick never agreed to pay the Berdan mortgage. If he had, in terms or by implication, a different question would be presented. He simply agreed, that if the Berdan mortgage is not adjudged usurious, and if Comstock delivers to him certain proceeds of his own mortgage, he will apply those proceeds in payment of the Berdan mortgage. No such proceeds have been delivered to him. On the contrary, by assuming that the decision at the Special Term, that the mortgage was usurious, was final, and by acting upon

it in delivery by Comstock of this mortgage to Dillaye, the power of receiving such proceeds and of so applying them is forever gone. That mortgage is a lien upon his property, and a claim against him personally. Thus the condition, upon which he agreed to make application of certain moneys upon the Berdan mortgage, to wit, the receipt from Comstock of the proceeds of the sale of his own mortgage, has never occurred. No such sale has been made, and no such proceeds have been delivered to him. This provision of the contract has become inoperative. The rights of the parties stand as if no such provision had ever been made.

Nor can I perceive any basis for the application of the principle of estoppel. What has Berdan done or omitted in consequence of the acts or promises of Sedgwick? What inconsistency in the transactions between Berdan and Sedgwick could arise by permitting this defence? Where has Sedgwick promised Berdan that he would not interpose this defence? Some of these conditions are necessary to create an estoppel. I do not perceive that any of them exist. The transactions were between persons other than Berdan. He was no party to the contract; and, as to Dillaye and Sedgwick, there is no pretence of even a breach of promise.

The agreement of December, 1853, was one in which Berdan had no interest. It was an attempt on the part of Dillaye to guard his right to contest the Berdan mortgage; an attempt on the part of Sedgwick to protect himself against the prior lien of that mortgage. This he could do by his covenants of title; and, if Dillaye had been a man of pecuniary responsibility, that would have been sufficient. In that event, no one would claim that he had forfeited his right to contest the mortgage. He could litigate it fully, and, in the event of failure, could resort to his covenants. He could have effected the same purpose by stipulating that $7,500 in money should remain in Judge Comstock's hands, as a deposit, until the Berdan mortgage was paid, or was adjudged to be invalid in a suit to be prosecuted for that purpose. Such a stipulation could not be construed into an estoppel against contesting the

mortgage,.or into an agreement for its payment. In any of these modes of guarding against a prior mortgage, I see nothing to prevent a purchaser, who has obtained the whole estate of the mortgagor, not undertaking its payment, from insisting that a prior mortgage is usurious and shall not be enforced against the land he has purchased. Although not, in my judgment, an agreement to pay Berdan's mortgage, or creating a fund for his benefit, the right of the parties to dispose of the mortgage for their own benefit, and its exercise, would end the trust, even if Berdan had been interested in the fund. (*Kelly v. Roberts*, 40 N. Y. R., 432.)

It is said, further, that this defence is for the benefit of Dillaye, and that the respondents cannot do for him what he cannot do for himself. As judgment has gone against him in a suit where he raised this question, the inference is drawn that the present defence must go down. Generally, and as a rule, the defence of usury is made for the benefit of the original borrower. When no deduction is made on account of the existence of such a mortgage, the benefit to him is direct and positive. I have never heard that this was an objection to the raising of the question by the subsequent purchaser. On the contrary, the books are full of such cases. I have endeavored already to show that the judgment against Dillaye creates no estoppel against these respondents. That he will be an ultimate gainer by the success of the present defence, is no argument against its interposition by the respondents. In every case where there are covenants of title, the same point arises, as they afford an indemnity in case of loss. It is not necessary that the purchaser should himself be an ultimate sufferer, to justify the defence.

Upon the whole case, I am for the affirmance of the judgment below.

LOTT, Ch. C., (dissenting). The only question presented for our decision on the present appeal is, whether it was competent for the defendants Sedgwick and Cowles to interpose

the defence of usury, set up by them in their answer, and I have arrived at the conclusion that it was not.

Conceding the general rule to be that the subsequent grantees of premises covered by a usurious mortgage can impeach it on that ground, where they are not conveyed subject thereto, this case does not come within it. The deed from Dillaye to those defendants, and the agreement executed by and between them at the time the deed was given, must be considered and deemed as constituting one transaction ; and although the premises are not declared in the deed to be conveyed subject to the mortgage, the agreement shows that such was the necessary result and consequence of the two instruments. The agreement recognizes the existence of the mortgage and its apparent lien on the property, and shows that the sum of $7,500, being the principal sum secured by that mortgage, was retained out of the purchase-money, and was to be applied to its discharge, unless Dillaye should be able to set it aside. It was not the intention of the agreement that the grantees should in any event, or under any circumstances, be released or discharged from the payment of that portion of the purchase-money, but on the contrary it was expressly provided that it should be paid either to Dillaye or Berdan the plaintiff, and it was declared that the mortgage placed in the hands of Comstock should be disposed of by him " *to pay off the said* mortgage given to Berdan," and that the proceeds thereof should be given to the said defendants " for that purpose," if Dillaye should fail to set aside the said mortgage. In no contingency was it contemplated or intended that those defendants should be at liberty to question its validity, or hold the premises discharged therefrom, without payment of that portion of the purchase-money which, by the terms of that agreement, was to be applied to its satisfaction, on a failure of Dillaye to invalidate it.

The transaction was in substance and effect the same as if the deed had contained in it the terms and provisions of the agreement, and had declared that the premises were subject

to the said mortgage given to Berdan; that the amount thereof had been retained out of the purchase-money, to be applied to the payment and satisfaction of that mortgage, unless Dillaye, their grantor, should succeed in setting it aside and have the premises discharged therefrom, in which case the amount so retained was to be paid to Dillaye; but if Dillaye failed in accomplishing that result, then that the said sum should be applied by them "to pay off the said mortgage given to Berdan."

In order to protect Dillaye and give him the proper security for the money so retained, and to protect him against his absolute conveyance, free from encumbrances, and at the same time release the grantees from the necessity of paying that money in cash, it was agreed that a mortgage for the amount, to be the first mortgage, from the grantees to the grantor, on the property covered by the Berdan mortgage, should be placed in the hands of Comstock and disposed of by him, as provided and directed in that agreement.

The obligation assumed by Sedgwick & Cowles to pay the amount retained to Berdan had, before the commencement of this action, become fixed and determined by the judgment of the Superior Court against Dillaye, adjudging that the bond (and consequently the mortgage accompanying it) was not usurious.

The delivery by Comstock to Dillaye, as found by the court, of the mortgage executed to him by Sedgwick & Cowles, and placed in the hands of Comstock for the specific object and purpose of having the proceeds thereof applied to such payment, if valid for any purpose, cannot affect the plaintiff. He, under the agreement specifying that object and purpose, was entitled to the benefit of its provisions, to the same extent at least as if they had been inserted in the deed from Dillaye to his grantees, in the form and in the manner before stated by me, and he could not be deprived or divested of the benefit thereof without his assent. (See *Hartley* v. *Harrison*, 24 N. Y. Rep., p. 170.)

It is conceded by the respondent's counsel in his points,

and such is unquestionably the law, that a purchaser of the equity of redemption, merely, in the mortgaged premises, or one who assumes to pay the mortgage as part of the purchase price, cannot set up the defence of usury.

The views above expressed show that Sedgwick and Cowles are purchasers standing in both those relations, and that they did not, as the counsel claims, purchase and obtain a convey-ance of "the entire interest" of Dillaye in the premises, "without any provision" on his part "to pay the mortgage or any part of it." They consequently cannot interpose this defence.

It is claimed on behalf of the defendants, in opposition to these views, that "the contract made with Dillaye, by which the mortgage of $7,500 was deposited with Comstock, was merely as an indemnity to them (the defendants) in case the mortgage to Berdan should be held valid."

That position is clearly untenable. It is shown, and there is no question of the fact, that a portion of the purchase-money, equal to the principal of that mortgage, was not paid by the purchasers and grantees, and under that agreement it was provided that it should not be paid until the mortgage was either set aside by Dillaye, or he had failed to effect that result, and the mortgage should, as the counsel says, "be held valid." They consequently had incurred no risk, or any lia-bility against which indemnity was necessary, or indeed in any manner proper. They assumed no personal liability, under the deed to them, or otherwise than by the said "con-tract." They had retained the sum above mentioned out of the purchase-money because the mortgage, although its validity was denied, was an apparent, and might be held to be an actual lien on, and payable out of the property. They thus held as full and perfect indemnity as was secured by the con-tract, and did not require it for that or any such purpose.

Its special provisions, moreover, show that it was not intended as an indemnity to the grantees, but on the con trary, that its object was to permit Dillaye to take such pro-ceedings as he might deem proper, to set aside the said mort-

gage and also to declare and provide that the mortgage deposited with Comstock for the unpaid purchase-money therein specified, for which the defendants acknowledged themselves to be liable, should be disposed of, on the determination of those proceedings as therein provided. The judgment of the Superior Court of New York is conclusive upon Dillaye as to the validity of the said mortgage, and the fact of his failure to set it aside is thereby established. The contingency on which the defendants were to be entitled to the disposition of their mortgage to pay off that given to Berdan the plaintiff, and to the receipt by them of the proceeds thereof for that purpose, has occurred. They should have availed themselves of their right and discharged their obligation and duty under the contract, instead of interposing a defence which, if successful, would have permitted them to hold the full and absolute title to the mortgaged premises without payment of a large portion of the purchase-money, confessedly unpaid, or have given the benefit thereof to Dillaye, thus practically in its effect, overruling the judgment of the Superior Court in the suit of Berdan against Dillaye, deciding and adjudging that as between those parties, Berdan and not Dillaye was entitled to the whole amount secured by the mortgage in question.

I have shown that they are precluded from setting up such a defence. The decision of the judge at Special Term sustaining it was therefore erroneous, and the General Term also erred in affirming the judgment based thereon. It follows that the judgments both of the General and Special Term must be reversed and a new trial ordered, costs to abide the event.

LEONARD, C., (dissenting). The defence of usury is personal to the borrower or debtor. He may interpose it or he may waive it. His privies in blood and estate may also avail themselves of this defence, unless barred or estopped by some act of the debtor. A contract tainted with usury is void; but the grantee of land subject to the lien of a usu-

rious mortgage, cannot interpose the defence, if the grantor has stipulated by his conveyance that the grantee is to pay the mortgage as part of the consideration money; nor if the conveyance is subject to the payment of the mortgage; nor if the conveyance is by deed of release or quit-claim. In such cases the grantee is a stranger to the usurious contract, and although he is a privy in estate with the debtor, cannot be heard to allege the usury.

·In this case Dillaye, ·the debtor, stipulated with· Cowles and Sedgwick, simultaneously with his conveyance to them and as a part of the transaction, to the effect, that if he failed to set aside the mortgage to Berdan, then they were to pay it out of a reserved fund, created out of a portion of the consideration money, by another mortgage executed by them on the same premises, for the same amount, placed in the hands of Judge Comstock, but if he succeeded in setting aside the mortgage to Berdan, then Judge Comstock was to deliver the new mortgage, executed by Sedgwick and Cowles, to Dillaye for his own benefit. The conveyance, however, appeared on its face to be a full covenant warrantee deed, free of encumbrance, containing no recognition of or reference to the mortgage to Berdan as an existing lien upon the land.

Dillaye, by the collateral agreement referred to, reserved to himself the right to the benefit of the defence of usury as against the mortgage to Berdan, and Sedgwick and Cowles were deprived of any interest whatever in the success cr failure of the litigation to be waged by Dillaye. If Dillaye succeeded, the mortgage held by Judge Comstock was to be delivered to him, and became operative as a lien upon the land for his benefit; if he failed, Judge Comstock was to deliver it to Sedgwick and Cowles, and they were to use it to raise the money to pay the mortgage to Berdan. It is apparent that Sedgwick and Cowles were in no more favorable condition than they would have been, had the land been conveyed to them by deed expressly subject to the mortgage to Berdan, and they had also assumed to pay it as part of the consideration money for the conveyance. They became,

thereby, strangers to the defence of usury, if any existed against the mortgage, and when they attempt to set it up in this action it is an interference in which they have no interest, and for the benefit of the original debtor and mortgagor to Berdan. It is an attempt to elect that the sum reserved by the stipulation, and secured by the new mortgage held by Judge Comstock, which they confessedly are bound to pay, shall be paid to Dillaye rather than to Berdan. There can be no doubt that Sedgwick and Cowles are excluded from alleging the usury of the mortgage to Berdan, as against Dillaye, by the stipulation between them, notwithstanding the statute declaring all contracts affected with usury to be void. They could maintain no action requiring Dillaye to litigate the question of usury with Berdan; nor could they defend an action brought by Dillaye upon their stipulation with him, upon the ground of the usurious character of his mortgage to Berdan, even if Dillaye had succeeded in establishing that defence in the action prosecuted against him by Berdan, in the Superior Court of the city of New York. They had purchased the land, and the sum in controversy was part of the consideration which they had agreed to pay. There was no usury as between them and their grantor, Dillaye. He had the right to reserve the personality and the individuality of this defence, and exclude them from the advantage of a successful issue to the defence arising from their privity in estate.

The statute of usury is in the nature of a penalty, and that is a sufficient reason for excluding all who are strangers from interposing it, and for confining its operations to parties and privies. Dillaye, the debtor and mortgagor to Berdan, is estopped from alleging in this action, that his mortgage is usurious, by the judgment of the New York Superior Court. He has failed forever to set aside the mortgage to Berdan. Had this judgment been recovered before the conveyance by Dillaye to Sedgwick and Cowles, there can be no doubt that it would operate as an estoppel. Judgments and decrees estop parties and privies from again litigating the same subject. How is the case now different? Sedgwick and Cowles are

not purchasers who are ignorant of the mortgage to Berdan, although it is not referred to in the deed to them. On the contrary, the agreement between them and Dillaye creates a fund to be applied to the payment of that mortgage in the event that Dillaye should fail to set it aside. That event has happened. Sedgwick and Cowles cannot retain the fund for their own benefit. Shall Dillaye have it? Clearly not. The judgment in the Superior Court forbids.

The security follows the principal debt. The debt was established by the judgment of the Superior Court, and as against Dillaye, the mortgage follows the debt. The defence of Sedgwick and Cowles, being exclusively for his interest, equity will hold that it inures for the benefit of the party who is entitled to the benefit of the debt and security, as against Dillaye. The agreement neutralized the effect of the covenant against encumbrances, in the deed from Dillaye, and the defendants can maintain no action against him, arising out of the existence of the mortgage to Berdan. On the contrary, the agreement provides a fund to be applied to the satisfaction of this mortgage in the contingency which has happened, viz., the failure of Dillaye to set it aside. He is now under an equitable obligation to compel the application of that fund to the payment of the mortgage debt to Berdan; and this is an equity which Berdan, under his judgment against Dillaye, is authorized to call on a court of equity to enforce.

In my opinion, this equity in favor of Berdan estops the defence of usury, as against these defendants.

The surrender of the new mortgage to Dillaye, by Judge Comstock, strengthens these views. One of the defendants assented to that transfer. Nor does the indemnity which the defendants received from Dillaye for their assent to the transfer, nor the subsequent transfer of the mortgage by Dillaye, affect the case. The mortgage to Berdan was a matter of record, and all parties acted with notice of the fact.

The judgment of the General and Special terms, should be reversed, and judgment should be rendered for the plaintiff for foreclosure and sale, for the amount of the mortgage and

interest, with the costs of the action, and the costs of the appeal to the General Term, and to the Court of Appeals.

For affirmance, HUNT, EARL and GRAY, CC.

For reversal, LOTT, Ch. C., and LEONARD, C.

Judgment affirmed with costs.