# Wytheville.

## STUART COURT REALTY CORPORATION, ET ALS. v. W. R. GILLESPIE.

### June 14, 1928.

#### Argued and submitted before Judge Holt took his seat.

1. EQUITY—*Parties—Whether Suit should be Brought by Real Party in Interest—Rule in Virginia—Code of 1919, Section 5144.*—The equitable rule that a suit in equity must invariably be brought in the name of the real party in interest and not in the name of another has been modified and changed in Virginia by section 5144 of the Code of 1919, which permits the owner of a beneficial equitable interest in any claim or chose in action to maintain suit in the name of the holder of the legal title for his use and benefit or in his own name to enforce collection of the same, and provides that in either case the beneficial equitable owner shall be deemed the real plaintiff and shall be alone liable for costs.

2. NEGOTIABLE INSTRUMENTS—*Corporate "Bearer" Coupon Bonds.*—Corporate "bearer" coupon bonds are negotiable instruments.

3. EQUITY—*Parties—Whether Suit should be Brought by Real Party in Interest—Holder of Corporate "Bearer" Coupon Bonds—Case at Bar.*—The instant case was a suit by the holder of corporate "bearer" coupon bonds secured by deed of trust for the foreclosure of the deed of trust. Defendant contended that complainant had no right to maintain the suit in his own name, as the bonds were really owned by another, who delivered them to complainant for the sole purpose of enabling complainant to bring the suit to foreclose the trust deed. The uncontradicted evidence brought complainant within the definition of a holder of negotiable paper as defined by section 5752 of the Code of 1919.

   *Held:* That under section 5613 of the Code of 1919, providing that the holder of a negotiable instrument may sue thereon in his own name, and under section 5144 of the Code of 1919, providing that the owner of a beneficial equitable title in a claim or chose in action may either maintain a suit in the name of the holder or in his own name, complainant as holder of the bonds and coupons had the right to institute and maintain the present suit.

4. MORTGAGES AND DEEDS OF TRUST—*Foreclosure Suit Brought by Holder of Bonds Secured by Deed of Trust—Defense that Issuance of Bonds and Deed of Trust were Obtained by Fraudulent Misrepresentations—Holder not a Purchaser—Case at Bar.*—The instant case was a suit by the holder of corporate "bearer" coupon bonds secured by deed of trust for the foreclosure of the deed of trust. Defendant contended that the bonds were invalid and the deed of trust illegal because procured by fraud and misrepresentations of the agents of the real owner of the bonds. Complainant was not the beneficial owner of the bonds which were transferred to him by the real owner for the sole purpose of enabling him to bring the present suit.

*Held:* That the defense of fraud in the procurement of the issuance of the bonds and the execution of the deed of trust was available to defendant in this suit, since the complainant was not a purchaser for value of the bonds.

5. MORTGAGES AND DEEDS OF TRUST—*Foreclosure Suit Brought by Holder of Bonds Secured by Deed of Trust—Defense that Issuance of Bonds and Deed of Trust were Obtained by Fraudulent Misrepresentations—Expression of Opinion—Reliance on Representations—Case at Bar.*—The instant case was a suit by the holder of corporate "bearer" coupon bonds secured by deed of trust for the foreclosure of the deed of trust. The defense to the suit was that the execution of the deed of trust and the issuance of the bonds were procured by the fraudulent misrepresentations of the agents of the real owner of the bonds. All the representations complained of were pure expressions of opinion, which were not relied on by defendant. After it was apparent that the representations which were rental estimates on a proposed apartment could not be realized, no steps were taken to repudiate the contract, but, on the contrary, the contract was ratified and affirmed.

*Held:* That the evidence failed entirely to establish any fraud in the procurement of the contract.

6. MORTGAGES AND DEEDS OF TRUST—*Bill to Foreclose Brought by Holder of Bonds Secured by Deed of Trust—Defense that the Transaction was Usurious—Case at Bar.*—In the instant case, a suit to foreclose a deed of trust by the holder of "bearer" coupon bonds secured by the deed of trust, it was contended that the transaction was usurious by reason of the fact that the bonds upon their face carried an interest rate of $6\frac{1}{2}\%$, and that the real owner of the bonds received a commission of 10% for services. There was evidence that the real owner acquired the bonds by a purchase and sale rather than as a loan of money. If the transaction were a sale and not a loan the question of usury would, of course, be eliminated.

7. USURY—*Corporations.*—Both the Virginia and New York usury statutes provide that the plea of usury shall not be available to a corporation.

8. MORTGAGES AND DEEDS OF TRUST—*Usury—Second Mortgage Creditors—Whether Second Mortgage Creditors May Avail Themselves of Usury in the First Mortgage—Case at Bar.*—Holders of notes who are second mortgage creditors secured under an instrument which expressly provided that it should be "subject and subordinate" to a deed of trust sought to be foreclosed in the instant suit, cannot be permitted to set up usury for the purpose of invalidating the prior mortgage to which they were not parties where the defense of usury was not available to the mortgage debtor itself, a corporation.

9. USURY—*Policy of Usury Laws—Defense Available Only to Debtor or One in Privity with Him.*—The policy of the legislature in adopting statutes of usury is the protection of borrowers against the oppressive exactions of lenders. It does not tend to the promotion of that policy that persons other than the victims of the usury should have the benefit of such statutes, and accordingly as a general rule usury is considered to be a ground of relief available only to the debtor or to one in legal privity with him.

10. MORTGAGES AND DEEDS OF TRUST—*Usury—Privity between Junior Mortgagee and Mortgagor.*—Whether or not a junior mortgagee occupies to the mortgagor such a relationship as to bring him into the required privity to enable him to attack a prior mortgage as being usurious is a question upon which the courts are not agreed, some of the courts bringing such creditors within the general rule, while others except them therefrom. Apparently the Virginia rule does not permit the holder of a junior encumbrance to attack the prior mortgage as being usurious.

11. MORTGAGES AND DEEDS OF TRUST—*Usury—Second Mortgage Creditors—Whether Second Mortgage Creditors May Avail Themselves of Usury in the First Mortgage—Case at Bar.*—Holders of second mortgage notes of a realty corporation cannot set up usury in the first mortgage for the purpose of invalidating that instrument under either the Virginia or New York law, since the realty corporation, the owner of the property, and the mortgagor under the first mortgage, as a corporation, is precluded from asserting that defense under both the Virginia and New York law.

12. MORTGAGES AND DEEDS OF TRUST—*Second Deed of Trust—Notice of Provision of Prior Deed of Trust—Usury in Prior Deed of Trust—Case at Bar.*—In the instant case holders of notes secured by a second deed of trust attacked the validity of the first deed of trust on account of usury. The second deed of trust provided that it should be "subject and subordinate" to the prior deed of trust. This provision charges the second mortgage lienors with notice of the conditions of the first deed of trust, and an inspection of that deed would have disclosed a reservation of interest at the rate of $6\frac{1}{2}\%$.

*Held:* That as the second lienors knowing the facts chose to make the

loan it would be distinctly inequitable to hold that the first lien, valid as to the borrower, was invalid as to the second lienors, notwithstanding the second lienors' express acceptance of the former's priority.

13. MORTGAGES AND DEEDS OF TRUST—*Beneficiaries of Second Deed of Trust Attacking First Deed as Usurious—Second Deed Also Usurious—Clean Hands—Case at Bar.*—In the instant case second mortgage lienors were attacking the first mortgage because of the reservation of interest at the rate of $6\frac{1}{2}\%$, and the taking of certain commissions, by the lenders. The second mortgage lienors were themselves in a position of having contracted for an interest rate of 7% on their notes, and their contract by which they intervened in this proceeding, a suit by the bondholders to foreclose the first deed of trust, was open to the very objection which they urged as a ground for having the first deed of trust declared illegal and void, and for having themselves legally substituted to the position of the first lienors.

*Held:* That under these circumstances the hands of the intervenors, the second mortgage lienors, were not entirely clean.

14. MORTGAGES AND DEEDS OF TRUST—*Second Mortgagee Attacking Prior Mortgage—Offer to Pay Amount Actually Advanced under the Senior Lien.*—In the instant case a second mortgagee was attacking the validity of a first mortgage on the ground of usury, and claimed that the validity of the mortgage was governed by the New York law. The prayer for relief was that the first mortgage should be decreed void and that the claim of the second mortgagee be decreed a first lien. This contention of the second mortgagee could not be sustained in view of a recent decision of the Supreme Court of New York holding that under such circumstances a junior encumbrancer had no right to procure a cancellation of a prior mortgage or to obtain other affirmative relief without paying, or offering to pay, the amount actually advanced upon the senior lien.

Appeal from a decree of the Law and Equity Court of the city of Richmond. Decree for complainant. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Leo P. Harlow, Shewmake & Gary* and *Wallerstein, Goode & Evans,* for the appellants.

*Hunton, Williams, Anderson & Gay*, for the appellees.

CHICHESTER, J., delivered the opinion of the court.

William R. Gillespie, of Bronxville, New York, the holder of $450,000.00 payable to bearer bonds, secured by deed of trust on a certain apartment house in the city of Richmond, instituted this proceeding by a bill for foreclosure filed in the Law and Equity Court of the city of Richmond on the first January Rules, 1927. The Stuart Court Realty Corporation, made defendant in the bill, answered, denying the right of the complainant, Gillespie, to maintain the suit, and charging fraud and usury in the bonds and mortgage.

Henry Wallerstein, as holder of $30,000.00 of notes secured by a second deed of trust and one of the petitioners to whom the appeal in this case was awarded, was allowed by the court to intervene and filed his petition in the cause attacking the first mortgage on substantially the same grounds.

The cause was referred to a commissioner of the court with direction to convene the creditors, to state an account of the debts of the realty corporation and their priorities.

There were other intervening creditors, among them Pollard & Bagby, Incorporated, who presented claims.

The commissioner reported the debts proven and their priorities, and in a very carefully prepared paper, after thorough investigation, reported against every contention of the intervenors. The court confirmed this report over the objection and exception of the intervenors, and this appeal was allowed by one of the judges of this court.

The essential facts out of which this controversy

arose are as follows: On the 3rd day of March, 1924, the Stuart Court Realty Corporation, a corporation organized under the laws of the State of Virginia, executed and delivered its indenture or deed of trust to Walter S. Klee, as trustee, to secure an issue of $450,000.00 first mortgage serial six and one-half per cent coupon gold bonds. The property conveyed by this deed of trust consisted of certain lots or parcels of land in the city of Richmond, Virginia, at the northwest corner of the intersection of Lombardy street and Monument avenue, and improvements to be constructed thereon. The bonds secured were taken over by S. W. Straus & Company, an investment corporation existing under the laws of the State of New York, pursuant to an agreement made the 5th day of February, 1924, between Weller Construction Company, Incorporated, and S. W. Straus & Company. This agreement was the result of negotiations had between the parties to provide funds for the construction of an apartment house on the lots referred to. Under this agreement the Weller Construction Company, Incorporated, agreed to construct the apartment house in accordance with the specifications provided for in the agreement, and S. W. Straus & Company agreed to make available the proceeds of sale of $450,000.00 of bonds. In carrying out its part of the agreement the Weller Construction Company, Incorporated, secured the incorporation of a company, known as the "Stuart Court Realty Corporation," and this company acquired the title to the property involved, executed the deed of trust of the 3rd day of March, 1924, and thereafter issued and delivered to S. W. Straus & Company $450,000.00 principal amount of the first mortgage serial six and one-half per cent coupon gold bonds.

The Weller Construction Company, Incorporated,

having caused to be organized the Stuart Court Realty Corporation, assigned the contract for the construction of the apartment house and the sale of the bonds to the latter company, receiving as consideration stock of the Stuart Court Realty Corporation of the par value of $82,500.00.

The Stuart Court Realty Corporation, by a deed of trust dated March 8, 1924, to Leon M. Nelson and Robert N. Pollard, trustees, undertook to secure the payment of the sum of $70,000.00 and interest at the rate of seven per cent per annum thereon.

Henry S. Wallerstein and Pollard & Bagby, Incorporated, who filed petitions in these proceedings, and appellants in this court, are the holders of some of the second mortgage notes of the Stuart Court Realty Corporation, secured by the deed of trust just referred to.

The first deed of trust contained the usual provision for the payment of the principal and interest as and when they respectively matured, but the Stuart Court Realty Corporation did not make provision for the payment of either principal or interest except the first year, the funds for which were reserved from the proceeds of the sale of bonds. The company failed to arrange to meet the payment of the bonds maturing March 3, 1926, the date of maturity of the bonds first maturing, and was thereafter in default.

Upon the default in the payment of the principal and interest S. W. Straus & Company, who had sold the issue of bonds to their customers, repurchased the bonds in default and acquired also the coupons. After months of delay and indulgence by S. W. Straus & Company, Incorporated, and the continued failure of Stuart Court Realty Corporation to make good the default, proceedings were instituted to foreclose the mortgage.

The bonds and coupons in default held by S. W. Straus & Company, all payable to bearer, were delivered to W. R. Gillespie so that he might take proper proceedings for the foreclosure of the deed of trust. W. R. Gillespie was at the time the treasurer of S. W. Straus & Company. The bonds and coupons were delivered to Mr. W. R. Gillespie with the understanding that he would institute necessary proceedings, and at the hearing before the commissioner the bonds and coupons were delivered to the commissioner, by counsel for Gillespie, and were withdrawn "subject to the right of the parties to have them produced in court or before the commissioner."

The Stuart Court Realty Corporation filed its answer, and while admitting the issuance and sale of the bonds, the execution and delivery of the deed of trust, and the default in the payment of the principal and interest as alleged in the complainant's bill, charged that the bonds were tainted with usury; that the deed of trust was illegal because of fraud and misrepresentation as to the prospects of the new apartment house and because of certain provisions contained in the deed of trust. The cause was referred to a commissioner of the court "to take an account of the debts of the Stuart Court Realty Corporation which constitute lien on said mortgaged property, including an account of all delinquent taxes upon said property, and that the said commissioner shall speedily report to this court as to the validity of, the amounts and order of priority of said liens."

Thereafter Henry S. Wallerstein and Pollard & Bagby, Incorporated, by petition, and before the commissioner, as the holders of the bonds issued under the second mortgage of Stuart Court Realty Corpora-

tion, which by its terms was expressly made subject and subordinate to the deed of trust of the Stuart Court Realty Corporation to Walter S. Klee, and bore interest at the rate of seven per cent, joined in the attack on the validity of the first mortgage and the bonds secured thereby. No evidence was submitted before the commissioner to support the allegation of fraudulent misrepresentation except in the testimony of Michael A. Weller to the effect that a representative of S. W. Straus & Company had induced him to believe that the rental returns from the building to be constructed would be greater than they had actually been, and that they were disappointed in the result. No complaint of this character had ever been made to S. W. Straus & Company, or any demand for the rescission of the contract, or offer made for return of the funds supplied by S. W. Straus & Company to the Stuart Court Realty Corporation.

The question raised by the assignments of error (sixteen in number) are—

1. That the complainant, William R. Gillespie, has no right to maintain this suit in his own name.

2. That the bonds issued under the deed of trust of March 3, 1924, are tainted with usury, and that the complainant is not entitled to recover on them.

3. That the deed of trust of March 3, 1924, is fraudulent and void as to the beneficiaries under the deed of trust of March 8, 1924.

4. That the terms of sale prescribed by the decree of the court below are unjust, prejudicial to the creditors of the Stuart Court Realty Corporation, and unconscionable.

5. That the decree is invalid under subsection 1, of section 11, of the Tax Bill. (Acts 1926, page 978.)

There is no merit in those contentions made under

questions 4 and 5. They were not argued before us or before the trial court. 1, 2 and 3 have been so fully and completely answered by the commissioner in his report to the court that we will content ourselves with practically quoting that report so far as it related to these questions. After stating the facts in substance as we have stated them, the commissioner held:

[1] Counsel for defendant and for Henry S. Wallerstein, an intervening junior lien creditor, contend that as the bonds were really owned by Straus & Company and were delivered to W. R. Gillespie for the sole purpose of enabling him to bring this suit, under these circumstances the complainant has no such interest, ownership or title in the bonds and coupons as would entitle him to bring and maintain this proceeding, involving the well established equitable principle that a suit in equity must invariably be brought in the name of the real party in interest and not in the name of another. In a note of argument filed with the commissioner, counsel cite numerous cases and text writers in which the foregoing equitable principle that a suit in equity must invariably be brought in the name of the real party in interest and not in the name of another, is propounded and it may be conceded that in the absence of statute, the principle contended for is established law and would be applicable to the situation disclosed by the evidence in this case. In Virginia, however, the equitable rule has been modified and changed by the provisions of section 5144 of the Code, reading as follows: "When the legal title to any claim or chose in action, for the enforcement of the collection of which a court of equity has jurisdiction, is in one person and the beneficial equitable title thereto is in another, the latter may either maintain suit in the name of the holder of the legal title for his use and

benefit or in his own name to enforce collection of the same. In either case the beneficial equitable owner shall be deemed the real plaintiff and shall be alone liable for costs."

In the first edition of Professor Lile's Equity Pleading and Practice (1916) the author, at section 51, pages 25–6, after stating the general equitable rule as above, adds in a footnote to the section the following: "By a recent unfortunate statute in Virginia this sensible and long established rule seems abrogated. Acts 1898–99, page 437."

The act of the legislature referred to was approved February 19, 1898, and all of the Virginia cases cited by counsel for Henry S. Wallerstein were decided prior to that date, the latest of these decisions being *Penn* v. *Hearon*, 94 Va. 773, 27 S. E. 599, decided July 8, 1897.

The bonds which are the basis of this suit are "bearer" bonds and section 7 of Article IX of the trust mortgage confers upon the "holders of a majority in amount of principal of such portion of bonds falling due at any respective maturity and/or the holders of a majority in amount of interest coupons falling due upon any interest date," etc., the right to sue for foreclosure or otherwise, with the written consent of the trustee, which has been given in this case.

[2, 3] It is too well established to require the elaborate citation of authority that corporate "bearer" coupon bonds are negotiable instruments. It has been so held by Virginia in *Arents* v. *Commonwealth*, 18 Gratt. (59 Va.) 750, and the *Citizens' Bank* v. *Schwartzschild*, 109 Va. 539, 544, 64 S. E. 954, 23 L. R. A. (N. S.) 1092, and by the Supreme Court of the United States in *White* v. *Vermont and Mass. R. R. Co.*, 21 How. 575, 16 L. Ed. 221.

Section 5752 of the Code, being a part of the nego-

tiable instruments act, thus defines the word "holder:" " 'Holder' means the payee or indorsee of a bill or note who is in possession of it or the bearer thereof." " 'Bearer' means the person in possession of a bill or note which is payable to bearer."

By section 5613 of the Code it is provided: "The holder of a negotiable instrument may sue thereon in his own name and payment to him in due course discharges the instrument."

The uncontradicted evidence in this case brings the complainant within the definition of a holder of negotiable paper as above defined and although as to S. W. Straus & Company the complainant occupies the position of an attorney in fact for collection, or *quasi* trustee, who would be obligated to account for any recovery, there is no doubt that under the foregoing statutory provisions complainant as holder of the bonds and coupons has the right to institute and maintain the present suit.

The commissioner then proceeds to fix the priority of the liens placing first the $450,000.00 of bonds held by Gillespie, the appellee, secured by the mortgage of March 3, 1924, and then follow the bonds secured by the deeds of trust in favor of the intervening creditors heretofore referred to.

[4, 5] Taking up the further questions raised by the assignments of error, the commissioner reports: The validity of the bonds secured by the first trust mortgage is attacked by the defendant and by intervening second mortgage bondholders, the basis of such attack being, first, an effort to show that the loan agreement which preceded the execution of the first mortgage, the execution of that instrument itself, and the issuance of bonds thereunder were procured by the fraudulent misrepresentations of the agents of S. W. Straus &

Company, which defense is available to the defendant in this suit, since the complainant, Gillespie, is not a purchaser for value of the bonds here involved.

The latter proposition is quite true, being established by the testimony of Gillespie himself, as well as admissions of his counsel, but the evidence fails entirely to establish any fraud in the procurement of the contract. It is unnecessary to review the testimony upon this phase of the case in detail, it being sufficient to say that all of the representations complained of were pure expressions of opinion and in addition, that such representations were not relied upon.

Mr. Weller, the president of the defendant corporation, testified that he and his brother, who was associated with him in the promotion of the Stuart Court Realty Corporation, were experienced in the construction of apartment buildings, were owners of apartment houses in Baltimore and Washington, and that the proposition had been personally investigated by him prior to the consummation of the loan agreement. He further testified that after he knew that the rental estimates on the apartment building could not be realized and after it had been necessary to twice reduce the initial rental rates, he took no steps to repudiate the contract, but, on the contrary, sought and received from S. W. Straus & Company several extensions of interest and other required payments. There is no support in the testimony of the suggestion that the contract was secured by fraudulent misrepresentations, there was no reliance upon the representations as made, and after it had become apparent that the estimated rentals could not be realized no steps were taken to abrogate the contract, but, on the contrary, the contract was ratified and affirmed.

The validity of the first mortgage bonds is further

attacked upon the ground that the transaction was usurious by reason of the fact that the bonds upon their face carry an interest rate of six and one-half per cent, and further that S. W. Straus & Company, who acquired the entire issue of four hundred and fifty thousand ($450,000.00) dollars, face value, received a commission of ten per cent (10%) or forty-five thousand ($45,000.00) dollars for their services in connection with the bond issue.

[6] The loan agreement produced in evidence as Exhibit "M. A. W. No. 1," treats the acquisition of the bonds by S. W. Straus & Company as a purchase and sale, rather than as a loan of money, and if the transaction were of the former character the question of usury would, of course, be eliminated.

[7] The defendant, in its answer, asserts that the bonds are Virginia contracts and governed by Virginia law, while counsel for Henry S. Wallerstein contends that the bonds are New York contracts and subject to the usury laws of that State. So far, however, as the defendant corporation and Pollard & Bagby, Incorporated (an intervening second mortgage creditor), are concerned, the question is immaterial, both the Virginia and New York statutes providing that the plea of usury shall not be available to a corporation. Code of Virginia, section 5655; Cahill's Consolidated Laws of New York, 1923, chapter 21, section 374.

[8] The question for decision then comes down to this: May Henry S. Wallerstein and R. T. Gregory, who are second mortgage creditors, holding notes secured under an instrument which expressly provides that it shall be "subject and subordinate" to the mortgage herein sought to be foreclosed, be permitted to set up usury for the purpose of invalidating a prior mortgage to which they are not parties where that defense is not available to the mortgage debtor itself?

[9] The general rule governing the availability of a plea of usury is well stated in 27 R. C. L., page 281, as follows: "The policy of the legislature in adopting statutes of usury is the protection of borrowers against the oppressive exactions of lenders. It does not tend to the promotion of that policy that persons other than the victims of the usury should have the benefit of such statutes, and accordingly as a general rule usury is considered to be a ground of relief available only to the debtor or to one in legal privity with him, * * *"

"To allow a stranger to interpose the defense of usury to a contract with which the maker is in all respects satisfied, and by the terms of which he desires to abide, and upon which he is liable for a deficiency judgment, would be exceedingly unfair to a debtor who desires to perform his contract, because he made it, or because he may deem it to be advantageous so to do. So long as the inclination to profit from man's adversity or necessity exists, a law limiting the rate of interest that the lender may charge the borrower for the use of money will continue to be wholesome and beneficial to society; but common experience suggests many instances in which the borrower may not desire to invoke the protection of the law enacted for his especial benefit."

The general rule as above stated applies both in Virginia and in New York. *Spengler* v. *Snapp*, 5 Leigh (32 Va.) 478; *Christian & Gunn* v. *Worsham*, 78 Va. 100, 108; *Saunders* v. *Baltimore Bldg. Fund*, 99 Va. 143, 37 S. E. 775; *Dickenson* v. *Bankers', etc., Co.*, 93 Va. 502, 25 S. E. 548; *O. & M. R. R.* v. *Kasson*, 37 N. Y. 218; *Berdan* v. *Sedgwick*, 44 N. Y. 626; *Amherst College* v. *Ritch*, 151 N. Y. 282, 45 N. E. 876, 37 L. R.

A. 305; *Preston* v. *Cuneo*, 140 App. Div. 144, 124 N. Y. Supp. 1031; *Chapuis* v. *Mathot*, 155 N. Y. 641, 49 N. E. 1094.

[10] Whether or not a junior mortgagee occupies to the mortgagor such a relationship as to bring him into the required privity to enable him to attack a prior mortgage as being usurious is a question upon which the courts are not agreed, some of the courts bringing such creditors within the general rule, while others except them therefrom, 27 R. C. L. section 85, page 284.

The New York courts apparently permit the holder of a junior encumbrance, under certain circumstances, to attack the prior mortgage as being usurious. *Weaver Hardware Co.* v. *Solomovitz*, 98 Misc. Rep. 413, 163 N. Y. Supp. 121; *Mutual Life Insurance Co.* v. *Bowen*, 47 Barb. (N. Y.) 618; *Union Dime Savings Bank* v. *Wilmot*, 94 N. Y. 221, 46 Am. Rep. 137.

The Virginia court, on the other hand, apparently adopts the opposite view. *Christian & Gunn* v. *Worsham*, 78 Va. 100. The rule of the New York courts is, however, subject to a limitation, thus stated in *Union Dime Savings Bank* v. *Wilmot, supra,* 94 N. Y. at page 228: "But a subsequent lien-holder can have no better right to interpose the defense of usury than the owner or borrower had at the time the lien was created. An owner or borrower may be estopped from setting up the usury, or he may in some legal way waive the defense, or, by agreement, purge the transaction of usury; and whoever thereafter purchases from him the real estate upon which the usurious security is a mortgage, or obtains a lien thereon from or under him, takes his position, and can have no better right to allege the usury than he had."

[11] If the rule as above stated be applied to the

facts in this case Henry S. Wallerstein and R. T.
Gregory, holders of second mortgage notes of Stuart
Court Realty Corporation, cannot set up usury in the
first mortgage for the purpose of invalidating that
instrument, since Stuart Court Realty Corporation,
the owner of the property, and the mortgagor under
the first mortgage is precluded from asserting that
defense under both Virginia and New York law. The
application of this rule, moreover, brings about a re-
sult which accords with the equities of this case. The
deed of trust securing the second mortgage notes con-
tains the following express covenant: "This deed of
trust is, and shall continue to be, subject and sub-
ordinate to a mortgage or deed of trust executed by
Stuart Court Realty Corporation to Walter S. Klee,
dated March 3, 1924, and of record in the clerk's
office of the Chancery Court of the city of Richmond,
Virginia, given to secure the principal sum of $450,-
000.00 and interest, and to all advances heretofore made
or which hereafter may be made thereunder, and to
any and all indebtedness intended to be secured there-
by, all of which said advances may be made without
notice to the party of the second part."

[12] That provision charged the second mortgage
lienors with notice of the condition of the first trust
mortgage, an inspection of which would have disclosed
a reservation of interest at the rate of six and one-half
per cent. The element of compulsion, which oft times
operates upon the borrower, and the alleviation of
which is the purpose and design of the usury statutes,
cannot be asserted as to a lender of money who is
under no compulsion or necessity of making the loan.
Knowing the facts he chose for an anticipated profit
to make the loan and it would be distinctly inequitable
to hold that the first lien, valid as to the borrower, is

invalid as to the second lienor, notwithstanding the latter's express acceptance of the former's priority.

[13] It is to be noted, moreover, that the second mortgage lienors who here urge that the first mortgage should be declared invalid because of the reservation of an interest rate of six and one-half per cent, and the taking of certain commissions by the lenders, are themselves in a position of having contracted for an interest rate of seven per cent on the notes which they hold, and while some, at least, of these second lienors have attempted to purge the transaction of usury by an avowal of their willingness to surrender all claims to interest in the future, the fact remains that they have heretofore collected interest at an illegal rate and that the contract under which they claim, and by virtue of which they intervene in this proceeding, is open to the very objection which they urge as a ground for having the first mortgage declared illegal and void, and for having themselves legally substituted to the position of the first lienors. Under these circumstances the hands of the intervenors are not entirely clean.

[14] Finally, the contention of the second mortgage creditors cannot be sustained in the light of the very recent decision of the Supreme Court of New York in *Yormark* v. *Waldman*, 127 Misc. Rep. 748, 217 N. Y. Supp. 501. The petition of Henry S. Wallerstein filed herewith prays, among other things, "that the said trust mortgage from the Stuart Court Realty Corporation to Walter S. Klee, trustee, hereinbefore particularly described shall be decreed to be void and that the claim of your petitioner may be decreed a first lien under the said deed of trust from Stuart Court Realty Corporation to Leon N. Nelson and Robt. N. Pollard, trustees," etc.

The facts in the New York case above referred to

and the relief therein sought conform essentially to the facts in this case and the relief herein sought in the petition of Henry S. Wallerstein.  The court, in the New York case cited, held that under such circumstances a junior encumbrancer had no right to procure a cancellation of a prior mortgage or to obtain other affirmative relief without paying, or offering to pay, the amount actually advanced upon the senior lien. The commissioner then reports that, in his opinion, "the trust mortgage from Stuart Court Realty Corporation to Walter S. Klee, trustee, dated March 3, 1924, is a valid and legal obligation, both as against the defendant in this case and the intervening second mortgage creditors."

There was no error in the decree of the court confirming this report and the decree is therefore affirmed.

*Affirmed.*